United States District Court
Southern District of Texas
FILED

JUL 1 6 2015

# UNITED STATES DISTRICT COURT

David J. Bradley, Clerk

**SOUTHERN** DISTRICT OF **TEXAS**

**SEALED**

UNITED STATES OF AMERICA
V.

Hector Mendez

Y.O.B: 1970

USC

**CRIMINAL COMPLAINT**

Case Number: M-15-1175-M

I, Ryan J. Porter, the undersigned complainant state that the following is true and correct to the best of my knowledge and belief.

On or about __07/24-07/29/2012__ In __Hidalgo__ County, in
the __Southern__ District of __Texas__ Defendant(s) did,

Knowingly and intentionally possessed with intent to distribute 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine, its salts, optical and geometric isomers, and salts of isomers: to wit, approximately 14.9 kilograms,

in violation of Title __21__ United States Code, Section(s) __841/846__ .

I further state that I am a __Special Agent__ and that this complaint is based on the following facts:
Official Title

See Attachment "A"

Continued on the attached sheet and made a part of this complaint:  ☒ Yes   ☐ No

approved by
AUSA KRG

Signature of Complainant

FBI Special Agent Ryan Jay Porter
Printed Name of Complainant

Sworn to before me and signed in my presence,

07/16/2015                      3:49 pm        at      McAllen, Texas
Date                                                   City and State

United States Magistrate Judge Peter Ormsby
Name and Title of Judicial Officer

Signature of Judicial Officer

## ATTACHMENT A

On July 29, 2012, at approximately 5:00 p.m., Mission Police Officer, and former DEA Task Force Officer (TFO), Hector Mendez seized a 1998 Ford Taurus from the parking lot of Ace's BBQ in Mission, Texas. The following day, July 30, 2012, pursuant to a search warrant, Mendez and other Mission PD officers searched the vehicle and discovered fifteen (15) bundles of cocaine in the trunk of the vehicle. Mendez recorded all these events in DEA and Mission Offense Reports. Also located within the Ford Taurus were several documents and a "For Sale" sign. Several days later, federal prosecution was initiated as to Salvador Gonzalez for his involvement in the distribution of the cocaine.

On September 4, 2013, analysis by the Texas Department of Public Safety laboratory indicated the gross weight of the cocaine was approximately 14.9 kilograms, and that the quality of the cocaine was poor with a purity concentration of eighteen (18%) percent.

Subsequent to being indicted in relation to the cocaine seizure, Gonzalez agreed to debrief with agents. Gonzalez advised the agents that facts and evidence as relayed in Mendez' reports and photographs were inaccurate as to the events surrounding the 15 bundles of cocaine. Gonzalez stated that, contrary to Mendez' reports, the cocaine had not been delivered to Ace' BBQ by Gonzalez on July 29, 2012, but in fact, Gonzalez had delivered the bundles to an individual (CS1) at a residence in Mission, TX several days prior to the reported seizure. Gonzalez also stated that the bundles he delivered were packaged differently than those represented in photographs provided by Mendez as part of the investigation. Gonzalez stated that he never utilized the Ford Taurus to deliver the cocaine to any destination. Gonzalez stated that he learned that the cocaine had supposedly been seized by law enforcement via a phone call from CS1.

In June 2015, a cooperating source (CS1) informed agents that Gonzalez was being truthful. CS1 stated that he/she had been a confidential source who had worked with Mendez. CS1 stated that the facts presented in Mendez' reports detailing the cocaine seizure were inaccurate. CS1 stated that in July 2012, he/she received the cocaine bundles from Gonzalez several days before the reported seizure by Mendez on July 29, 2012. CS1 stated that Gonzalez delivered the bundles to CS1 at CS1' residence in Mission, TX. CS1 stated that the bundles were tightly wrapped. CS1 stated that shortly after Gonzalez delivered the cocaine to CS1' residence, Mendez arrived at CS1' residence at took all the cocaine bundles. CS1 stated Mendez had arranged to dilute ("cut") the cocaine so that the bulk of the narcotic could be stolen and re-distributed for a profit. CS1 stated that Mendez arranged for the staged seizure of the cocaine on July 29, 2012 in order to conceal the theft.

In July 2015, agents contacted an individual (SOI1) who advised that in July of 2012, he/she had sold the 1998 Ford Taurus to an individual out of the Pharr, TX area. SOI1 was able to provide agents with a telephone number for the person to whom SOI1 sold the Taurus. Agents subsequently contacted this purchaser (SOI2) of the Ford Taurus. SOI2 stated that on approximately July 27, 2012, SOI2 purchased the vehicle from SOI1 for about $400. SOI2 stated that he/she purchased the vehicle in order to re-sale it for a profit. SOI2 stated that he placed a "For Sale" sign on the car which listed SOI2' cell phone number. SOI2 stated that on July 28, 2012 or July 29, 2012, SOI2 received a call inquiring about the vehicle. Shortly after the call, two individuals arrived at SOI2' location and wanted to purchase the vehicle. SOI2 stated that the individuals appeared to be talking via cell phone to another individual. SOI2 stated that the two individuals did not test-drive the vehicle or inspect any of the components. SOI2 stated that within minutes the two individuals paid SOI2 approximately $800 and drove the vehicle away.

Agents obtained phone tolls for calls made from or received by a DEA cell phone issued to and utilized by Mendez. Phone toll analysis indicates that Mendez' cell dialed and called SOI2' cell phone number, which was listed on the "For Sale" sign, three different times prior to the seizure at 5:00 p.m. on July 29, 2012, as

reported by Mendez. The records indicate that Mendez' cell phone contacted SOI 2 cell phone once on July 28, 2012 at approximately 6:00 p.m., and again at approximately 2:04 p.m. and 2:10 p.m. on July 29, 2012.

In June and July 2015, agents interviewed Mendez about the events surrounding the cocaine seizure and the accompanying reports. Mendez claimed to have no knowledge of any theft, but made several inconsistent and inaccurate statements concerning his and other interaction with CS1, his knowledge of the history of the Ford Taurus, and dates and sequence of events during the time of the cocaine seizure.